IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JIMMY DON WOOTEN,                    *
                                     *
            Petitioner,              *
                                     *
vs.                                  *        No. 5:03cv00370  SWW
                                     *
                                     *
                                     *
LARRY NORRIS, Director,              *
Arkansas Department of Correction,   *
                                     *
            Respondent.              *

MEMORANDUM OPINION AND ORDER

        Jimmy Don Wooten, an inmate in custody of the Arkansas Department of Correction, is

under sentence of death for the 1994 murder of David LaSalle.  Wooten seeks a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), on grounds that both his conviction and sentence are in

violation of various provisions of the United States Constitution.  Having carefully reviewed the

record, the Court concludes each of the grounds advanced by Wooten in support of his petition

for writ of habeas corpus is without merit.[1]

I.

        On August 5, 1994, David LaSalle, Henry Teb Porter, and Porter's eighteen year-old

daughter, Molly, were hiking on a forest trail near the Long Pool Recreation area in Pope

---

        [1] Wooten has filed an initial petition for writ of habeas corpus [doc.#1] and a first amended and supplemental petition
for writ of habeas corpus [doc.#9], to which responses and replies have been filed.  Also before the Court is a motion for
summary judgment filed by respondent Larry Norris [doc.#16], to which Wooten has responded in opposition.  This motion is
denied as moot in light of this Court's resolution of Wooten's petition for writ of habeas corpus.

County, Arkansas, when they encountered Wooten riding a six-wheel all-terrain vehicle

("ATV").  According to Porter and Molly, this was the fourth time that day the group had

encountered Wooten.  The group's first encounter with Wooten consisted of him driving past

them at a fairly high rate of speed without acknowledging their presence.  When the group next

encountered Wooten, he stopped and talked to them for a few minutes in a "very cordial" fashion

and gave them directions to the Long Pool area where they were going to meet others for a

picnic.  The group's third encounter with Wooten occurred about three to five minutes after the

second encounter and consisted of him again driving past them at a high rate of speed without

acknowledging their presence and, according to Porter, "looking agitated."  The group's fourth

encounter with Wooten took place about two minutes later and began tragically and without

warning.  As the group was continuing their hike on the trail, Porter heard multiple gunshots and

saw LaSalle slump to the ground, having been fatally shot in the head.  Porter felt a "bee sting"

on his shoulder – the result of a gunshot – and grabbed Molly by the arm, pulling her down.

Porter looked in the direction from which the shots came and saw Wooten in a slight crouch with

both hands on a semi-automatic pistol.  Porter felt something hit him in his face and his head was

knocked back into the dirt.  When blood began "gushing out," Porter realized he had been shot

again.  As Wooten was attempting to reload his pistol, Porter jumped up and ran at Wooten.

Molly was lying on the ground next to LaSalle and screaming at Wooten not to shoot her father.

Wooten ran away from Porter as he continued to attempt to reload the pistol and hid behind a

tree.  Porter then took the keys from Wooten's ATV and ran into the woods saying, "Now try to

get out of here."  Having apparently successfully reloaded his pistol, Wooten stepped out from

behind the tree and pointed the gun at Porter.  Porter ran for a distance and then stopped to see

what Wooten was doing because Molly was still lying beside LaSalle.  Wooten began firing

again and hit Porter in the forearm.  Upon being hit, Porter continued running and ended up at a

farm where he summoned help.  Molly, after vainly trying to assist LaSalle, ran from the scene

and ultimately hid under a rock on a small cliff.[2]   Porter accompanied authorities back to the

scene of the shooting and Molly was soon located unharmed.  Both Porter and Molly positively

identified Wooten as the assailant.[3]

On February 16, 1995, a Pope county jury convicted Wooten of capital murder, one count

of attempted capital murder, and one count of aggravated assault.  He was sentenced to death,

thirty years imprisonment, and six years imprisonment, respectively for the offenses.

Wooten appealed his convictions and sentences to the Arkansas Supreme Court.  Wooten

was represented on direct appeal by his trial counsel, David L. Gibbons.  The Arkansas Supreme

Court affirmed the convictions and sentences, *Wooten v. State*, 325 Ark. 510, 931 S.W.2d 408

(1996) (hereinafter *Wooten* I), and the United States Supreme Court denied certiorari. 519 U.S.

1125 (1997).[4]  Wooten, now represented by James O. Clawson, petitioned the circuit court for

post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure.  The circuit

court denied relief without issuing detailed findings in support of its decision and without

conducting a hearing.  Wooten appealed and the Arkansas Supreme Court reversed and

remanded the case for written findings in support of the trial court's decision or for an

---

[2] Molly states she later heard someone come back and start the ATV and drive off.  According to a law enforcement investigator and a friend of Wooten's who was familiar with Wooten's ATV, it is possible to start that particular vehicle with just a regular lawnmower key or knife blade.  R. at 872-73, 1101.

[3] According to law enforcement investigators, Wooten claimed that an individual that "looked just like him" stole his ATV, that he heard shots and thought the individual that stole his ATV was shooting at him, and that he later found his ATV missing keys and with blood on it and the pistol on the floor without its magazine.  R. at 280-86, 781-86, 846-54, 872.

[4] Wooten was represented on his certiorari petition by Jeffery M. Rosenzweig.

evidentiary hearing if additional evidence was required.  *Wooten v. State*, 338 Ark. 691, 1 S.W.3d 8 (1999) (hereinafter *Wooten* II).  On remand, the trial court again denied post-conviction relief.  Clawson had apparently moved on by this time and Wooten filed a *pro se* motion to file a belated appeal and for appointment of counsel.  The motion was granted and Alvin Schay (Wooten's co-counsel on the instant petition along with Assistant Federal Public Defender Bruce D. Eddy) was appointed to represent Wooten.  *See* Am. Pet. at 4-5.  On December 5, 2002, the Arkansas Supreme Court affirmed the trial court's decision.  *Wooten v. State*, 351 Ark. 241, 91 S.W.3d 63 (2002) (hereinafter *Wooten* III).

On October 2, 2003, Wooten filed his initial and, subsequently, his amended petition for writ of habeas corpus in this Court, asserting the following grounds for relief: (1) his post-conviction counsel acted fraudulently thereby preventing him from challenging inadequate adversarial testing that occurred at his trial, in violation of his Sixth, Eighth, and Fourteenth Amendment rights; (2) his Sixth, Eighth, and Fourteenth Amendment rights were violated by trial counsel failing to provide adequate adversarial testing during his trial; (3) his Eighth and Fourteenth Amendment rights were violated when the trial court did not properly instruct the jury on parole eligibility; (4) he has been sentenced to death in violation of his Sixth, Eighth, and Fourteenth Amendment rights due to juror misconduct or error; (5) the Arkansas Supreme Court's opinion on his claim of ineffective assistance of counsel in the penalty phase of his trial is contrary to, or involved an unreasonable application of, clearly established federal law; (6) his Sixth, Eighth, and Fourteenth Amendment rights were violated by juror bias; (7) his Eighth and Fourteenth Amendment rights were violated because the "great risk of death" aggravating circumstance fails to adequately narrow the sentencer's discretion; (8) the Arkansas victim

impact statute is unconstitutionally vague in that it is void for vagueness, impossible to reconcile or weigh it with other capital sentencing requirements, and permits the jury to consider irrelevant and inflammatory evidence amounting to non-statutory aggravation; (9) Arkansas' use of victim impact testimony is prohibited by the United States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), and, alternatively, *Ring* should be found to be retroactive to cases on collateral review; (10) the Arkansas Supreme Court's decision regarding the prosecution's use of a peremptory strike on the only African-American on the jury venire is not fairly supported by the record and is not entitled to a presumption of correctness; and (11) he is mentally retarded and ineligible for the death penalty pursuant to the Eighth Amendment and the United States Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304 (2002).

## II.

### A.

In order to preserve a claim for relief, a habeas petitioner must present that claim to the state court and allow that court an opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted. *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir.) (en banc), *cert. denied*, 517 U.S. 1215 (1996)). In this respect, the doctrine of procedural default asks "not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts...." *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original).   "We have held repeatedly that a claim has not been fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas petition have been properly raised in the prisoner's state court proceedings." *Krimmel v. Hopkins*, 56 F.3d 873, 876 (8th Cir.), *cert. denied*, 516 U.S. 1015 (1995).   "We have also held that a claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." *Id.* (quoting *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993)).   "In order to fairly present a federal claim to the state courts, the petitioner must have referred 'to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (quoting *Myre v. State of Iowa*, 53 F.3d 199, 200-01 (8th Cir. 1995)).   A claim may be lost due to procedural default at any level of state court review: at trial, on direct appeal, or in the course of state post-conviction proceedings.   *Kilmartin v. Kemna*, 253 F.3d 1087, 1088 (8th Cir. 2001) (citation omitted).

Where a claim is defaulted, a federal habeas court will consider it only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice.   *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338-39).   "Cause" for the procedural default exists, for example, when counsel has been constitutionally ineffective or when an objective, external impediment prevented counsel from complying with the state's procedural rule.   *Noel v. Norris*, 194 F.Supp.2d 893, 904 (E.D.Ark. 2002) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   To demonstrate prejudice, a

petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions ... [such that he] was denied fundamental fairness at trial." *Id.* (quoting *Murray*, 477 U.S. at 494).

B.

When a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus can only be granted where the state court adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Davis v. Norris*, 423 F.3d 868, 874 (8th Cir. 2005) (quoting § 2254(d)). "A decision is 'contrary to' federal law in the AEDPA sense if a state court has arrived 'at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or if it 'confronted facts that are materially indistinguishable from a relevant Supreme Court precedent' but arrived at an opposite result." *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). "A state court unreasonably applies clearly established federal law when it 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). "Habeas relief cannot be granted just because a federal court concludes that the state court erred in its application of federal law; the test is whether the state court's application of the law was unreasonable." *Id.* at 874-75 (quoting *Williams*, 529 U.S. at 411). Finally, facts found by the

state court are presumed to be correct unless the applicant can rebut the presumption by clear and

convincing evidence.  *Rouper v. Rosan*, 436 F.3d 951, 956 (8th Cir. 2006) (citing § 2254(e)(1)).


### III.

Having set forth the background of this petition and the standard of review to be applied,

the Court now turns to a discussion of Wooten's asserted grounds for habeas relief.[5]  As an

initial matter, respondent argues that not one of Wooten's enumerated claims for relief was ever

presented to the Arkansas Supreme Court in a manner that would allow that court to address the

claim on the merits.  Resp. to Am. Pet. at 10.  As such, argues respondent, all of Wooten's

claims are procedurally defaulted.  *Id.*  Nevertheless, respondent acknowledges and addresses

two general issues that he states can be found in both Wooten's federal habeas petition and his

various state court proceedings, namely victim impact related issues and issues concerning

*Batson v. Kentucky*, 476 U.S. 79 (1986), and he also addresses one *Atkins* issue based on mental

retardation, acknowledging Wooten's argument (but not agreeing) that this issue could not have

been raised in state court as it did not then exist.  *Id*. at 12, 13, 19, 22.  For his part, Wooten

"acknowledges that this petition contains some new claims and factually develops certain other

claims made in state postconviction."  Am. Pet. at 7-8.  He argues, however, that "any procedural

bar to this Court's consideration of the new claims or the factual development of claims made in

state postconviction should be excused under the unique facts of this case," namely the

---

[5] The Court addresses those grounds without holding an evidentiary hearing as § 2254(e)(2) provides that "a court shall not conduct an evidentiary hearing unless a petitioner failed to develop a claim in state court, provided that the claim relies on a new rule of constitutional law or on 'a factual predicate that could not have been previously discovered through the exercise of due diligence' and the facts would 'establish by clear and convincing evidence' the petitioner's actual innocence."  *Morris v. Dormire*, 217 F.3d 556, 559 (8th Cir.), *cert. denied*, 531 U.S. 984 (2000) (citing *Williams v. Taylor*, 529 U.S. 420, 433-37 (2000)).  *See also Hatcher v. Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001), *cert. denied*, 536 U.S. 926 (2002).  Wooten does not satisfy the statutory requirements with respect to any of his asserted grounds for habeas relief.

circumstances and representation of his retained postconviction counsel, James O. Clawson.  *Id.*
at 8-19.   It is the circumstances and representation of Clawson that is the subject of Wooten's
first claim for relief, a claim to which the Court now turns.


1.

Wooten argues that Clawson was a convicted felon and practicing law in Arkansas by
fraud and deceit and that this fraud prevented a complete challenge to the inadequate adversarial
testing that occurred at his capital trial, in violation of his Sixth, Eighth, and Fourteenth
Amendment rights.  Wooten points to the following "highlights" of Clawson's legal career:

| | |
|---|---|
| 1993: | Disbarred in Oklahoma for failure to pay dues and attend CLE. |
| 1994: | Oklahoma conviction and sentencing. Sentenced to two years in Oklahoma on two separate grounds of uttering a  forged instrument. |
| 1998: | Reprimanded by the Arkansas Supreme Court for mishandling bankruptcy case. |
| 1998: | Reprimanded by the Arkansas Supreme Court for deceptive advertising. |
| 1999: | Referred to the Arkansas Committee of Professional Conduct for failing to file appeal on behalf of his client. |
| 2001: | Sentenced to eighteen months imprisonment by the United States District Court for the Eastern District of Arkansas after being found guilty of six counts of bankruptcy fraud. |
| 2001: | Disbarred in Arkansas - relinquished license. |

Wooten acknowledges that the issue of Clawson's fraud was not presented to the
Arkansas courts, stating it was not discovered and developed in adequate time, but asserts that
Clawson provided ineffective assistance of counsel and that this excuses any procedural default.

Claims of ineffective assistance of counsel are analyzed under *Strickland v. Washington*,

466 U.S. 668 (1984):

> [F]irst, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable. Unless a defendant
> makes both showings, it cannot be said that the conviction or death sentence
> resulted from a breakdown in the adversary process that renders the result
> unreliable.
>
> [J]udicial scrutiny of a counsel's performance must be highly deferential and . . .
> every effort [must] be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and to evaluate
> the conduct from counsel's perspective at the time.

*Id*. at 687.

The defendant must show a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.  *Id.* at 694.  A reasonable

probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  In

determining whether an attorney has acted reasonably, "a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action might be considered sound trial strategy."  *Id*. at 689 (quoting *Michel v.

Louisiana,* 350 U.S. 91, 101(1955)); *see also Noel v. Norris*, 322 F.3d 500, 502 (8th Cir.), *cert.

denied*, 539 U.S. 972 (2003).

Here, there is no occasion to examine whether Clawson rendered ineffective assistance of

counsel sufficient to excuse any procedural default as there is no Sixth Amendment right to the

effective assistance of post-conviction counsel, the position in which Clawson served.  *See*

*Armstrong v. Iowa*, 418 F.3d 924, 927 (8th Cir. 2005), *cert. denied*, 126 S.Ct. 1351 (2006).  Any

such ineffective assistance is insufficient as a matter of law to serve as cause for the default.  *Id.*

Even if Wooten could show cause for the default, he cannot show prejudice.  Wooten

argues that the nature and quality of Clawson's misconduct under the circumstances is such that

confidence is clearly undermined in the outcome of Wooten's trials, convictions, and sentence of

death.  However, as will be seen with this Court's disposition of each of Wooten's asserted

grounds for habeas relief, Wooten cannot show a reasonable probability that the outcome of

Wooten's various proceedings would have been different absent Clawson's representation.

*Strickland*, 466 U.S. at 694.  Moreover, Clawson represented Wooten successfully on his Rule

37 post-conviction claim when the Arkansas Supreme Court reversed and remanded Wooten's

post-trial appeal to the trial court to either conduct a hearing or enter an Order with findings of

fact; Clawson was still licensed to practice law in Arkansas when he obtained a reversal of the

trial court's denial of Wooten's Rule 37 claims.  Clawson's representation, then, did not cause

any prejudice to Wooten and, in fact, afforded him the only legal victory of substance in the

course of these proceedings.[6]

In sum, Wooten has not demonstrated either cause for the default concerning the issue of

Clawson's representation and actual prejudice, or that the default will result in a fundamental

miscarriage of justice.  *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338-39).

---

[6] Wooten also challenges the qualifications of Clawson in reference to the qualifications required for appointed counsel under Ark.R.Crim.P. 37.5(c), stating there is nothing in the record indicating Clawson had the required experience. Aside from the fact that the Arkansas Supreme Court held that "Wooten is proceeding under Rule 37.2(c) because he became eligible to file a petition under Rule 37 before March 31, 1997, and therefore, he was not eligible to proceed under Ark. R.Crim. P. 37.5," *Wooten* III, 351 Ark. at  244, 91 S.W.3d at 64, Wooten has failed to demonstrate that he was prejudiced by Clawson's representation, even if Clawson's qualifications did not compare to those found in Rule 37.5.

2.

Wooten next claims his Sixth, Eighth, and Fourteenth Amendment rights were violated by trial counsel's unreasonable failure to investigate, prepare and present mitigating evidence and provide Wooten with adequate adversarial testing in the following areas: (a) failure to investigate Wooten's life history, (b) failure to investigate mental health history for issues relating to guilt and sentencing, (c) failure to object to victim impact testimony during the guilt phase, and (d) failure to object to inflammatory prosecutor argument. Wooten claims that trial counsel's failure in these areas denied him effective assistance of counsel and that this ineffective assistance is cause for procedural default. The Court will address these areas in turn.

a.

Wooten claims that trial counsel failed to investigate and present pertinent information regarding Wooten's life history that should have been presented during the mitigation phase. He argues that trial counsel's failure to unreasonably investigate and prepare for trial rendered his trial unreliable. *Cf. Wiggins v. Smith*, 539 U.S. 510 (2003) (finding counsel failed to uncover the existence of extensive sexual and psychological abuse as a child).

In reviewing and denying Wooten's mitigation claim, the Arkansas Supreme Court stated as follows:

> The guarantee of effective assistance of counsel includes the sentencing phase of a criminal trial. *Coulter v. State*, 343 Ark. 22, 31 S.W.3d 826 (2000). Counsel's primary function in the penalty phase of a capital trial is to neutralize the aggravating circumstances and to present mitigating evidence. *Sanford v. State*, 342 Ark. 22, 25 S.W.3d 414 (2000). A decision not to offer significant mitigating evidence is a matter of trial strategy only where the decision is made after a full investigation of all the mitigating circumstances so that counsel may make an informed tactical decision. *Sanford, supra*. The failure to carry out an

12

investigation into mitigating circumstances may constitute ineffective assistance of counsel requiring reversal. *Coulter*, *supra*. However, reversal is not automatic. *Coulter*, supra. The petitioner must show that but for counsel's errors, there is a reasonable probability that the sentence imposed would have been different. *Camargo v. State*, 346 Ark. 118, 55 S.W.3d 255 (2001). *See also Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Thus, in the Rule 37 petition proceedings, Wooten had to show that but for his counsel's failure to put on additional evidence in mitigation, there is a reasonable probability that a different sentence would have been imposed. Two witnesses in mitigation were presented, a coworker who testified Wooten had several job skills and was a good worker, and a jailer who testified that Wooten had been a good prisoner.

Wooten argues other evidence in mitigation should have been offered. However, Wooten provided nothing to the trial court in his Rule 37 petition proceedings regarding what mitigation evidence his counsel should have presented. He states in his brief that the Rule 37 court noted that "petitioner did not state what additional witnesses for Mr. Wooten would have said." Wooten fails to establish what other witnesses would have testified to, and he fails to show how their testimony could have changed the outcome of his case. When a petitioner fails to show what the omitted testimony was and how it could have changed the outcome, we will not grant postconviction relief for ineffective assistance of counsel. *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000); *Johnson v. State*, 321 Ark. 117, 900 S.W.2d 940 (1995). Wooten thus fails to show that he is entitled to relief on this point.

*Wooten* III, 351 Ark. at 245-46, 91 S.W.3d at 66.

The record demonstrates that trial counsel filed numerous motions seeking the exclusion of certain evidence and requesting other evidence and that he did in fact prepare and investigate the case. *See e.g.* R. at 108, 111, 114, 117, 119, 120, 127, 129, 132, 136, 145, 148 and 150. Indeed, in pleadings filed February 8 and 9, 1995, trial counsel identified 18 individuals he intended to call as witnesses at trial. R. at 132, 136. Although trial counsel ultimately called four witnesses during the guilt phase – including Wooten's wife – and two mitigation witnesses during the penalty phase – a former co-worker and a jailer regarding Wooten's good behavior – he effectively conducted direct-examination on each of those witnesses and he conducted

13

effective cross-examinations on all of the state's witnesses.  Indeed, the jury found as mitigating circumstances that Wooten had no significant history or prior criminal activity, that Wooten has developed an exemplary work ethic, that Wooten has developed more than one job skill and has job skills that can be utilized in prison, that Wooten has adapted to incarceration and been a good prisoner, that Wooten has not been involved in any violent activity while incarcerated, and that Wooten, although given the opportunity, did not take the life of Molly Porter.  R. at 1223.

Wooten argues that trial counsel was ineffective for not presenting additional mitigation witnesses, such as Wooten's mother, wife and siblings, but he has not demonstrated that counsel's decision not to call all the witnesses he earlier identified and any additional witnesses was anything other than sound trial strategy.  *See Rodden v. Delo*, 143 F.3d 441, 448 (8th Cir.), *cert. denied*, 525 U.S. 985 (1998) (whether or not mitigating evidence is presented in the sentencing phase and the determination of what, if any, evidence is ultimately selected to be presented, is a strategic decision made by defense counsel) (citing *Fretwell v. Norris*, 133 F.3d 621, 627 (8th Cir.), *cert. denied*, 525 U.S. 846 (1998)).  Moreover, given the evidence against Wooten, including Porter's and Molly's compelling testimony at trial positively identifying Wooten as the assailant, it cannot be said that there is a reasonable likelihood the jury would have acquitted Wooten of capital murder or sentenced him to life even if trial counsel had admitted additional evidence of life history.  *Id.* (citing *Strickland*, 466 U.S. at 694).  Wooten has not shown ineffective assistance of counsel regarding investigation and presentation of evidence in the penalty phase concerning Wooten's life history.

b.

14

Wooten claims trial counsel failed to adequately investigate his mental health for issues relating to guilt and sentencing.  He argues that had trial counsel conducted an adequate social history investigation and sought funding for a mental health expert or taken steps to secure the assistance of a mental health expert as required by *Ake v. Oklahoma*, 470 U.S. 68 (1985), he would have found that Wooten's actions on August 5, 1994, were the product of a mental disease or defect and that Wooten lacked the capacity to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct at the time of the offense.

*Ake* provides the constitutional guarantee to funding for mental health assistance when mental health is raised as an issue at trial.  Applying the holding of *Ake*, the Arkansas Supreme Court stated,

> the [United States] Supreme Court held [in *Ake* ] that when a defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that the State assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. In Arkansas, the statutory procedures to be followed when the defense of mental disease or defect is raised are found in Ark.Code Ann. § 5-2-305 (Repl.1993). We have repeatedly held that a defendant's right to examination under *Ake* is protected by an examination by the state hospital as provided by this statute.... An evaluation performed under this section does not normally require a second opinion ... and further evaluation is discretionary with the trial court....  Stated simply, the State is not required to pay for a defendant to shop from doctor to doctor until he finds one who will declare him incompetent to proceed with his trial.

*Dirickson v. State*, 329 Ark. 572, 576-77, 953 S.W.2d 55, 57 (1997) (citations omitted).

Thus, *Ake* only provides that when a defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the State must assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.  Wooten failed to make

such a preliminary showing, however, perhaps because there is nothing in the record

demonstrating that his sanity at the time of the offense was likely to be a significant factor at

trial.[7]  Wooten has not shown ineffective assistance of counsel due to trial counsel's alleged

failure to adequately investigate his mental health for issues relating to guilt and sentencing.


c.

Wooten claims that trial counsel failed to object to inadmissible victim impact testimony.

Specifically, he claims that the testimony of Beth LaSalle, the deceased victim's wife, was

impermissible under *Payne v. Tennessee*, 501 U.S. 808 (1991), as it was presented during the

guilt phase of the trial.  The record, however, reveals that Beth LaSalle testified during the guilt

phase of the trial as to her involvement and activities on the day of the crime.  Beth LaSalle

provided introductory information to the jury about herself,  her relationship to the victim, and

their purpose in Arkansas.  R. at 769-776.  The testimony Wooten asserts was improper was

primarily informative in nature and related to her role on the day of the murder – it was not

victim impact testimony.  The Court thus does not find any of Beth LaSalle's testimony during

the guilt phase prejudicial or inappropriate, and trial counsel was not ineffective for failing to

object to such testimony.

Beth Lasalle *did* offer victim impact testimony during the sentencing phase, the first

person to testify during the State's initial presentation, and trial counsel objected, claiming that

such testimony was improper because it was elicited during the State' initial presentation rather

---

[7] Among other things, Wooten was able to hold several jobs, including maintenance work and small vehicle repairs, graduate high school (albeit near the bottom of his class), attend college for two years, maintain his driver's license, and, apparently, operate an aircraft, having formerly owned a "Beachcraft Skipper" airplane.  R. at 177-79, 1357; Am. Pet., Ex. 35.

than as rebuttal to any mitigating evidence offered by Wooten.  R. at 1186-1188, 1191-1200.  To

the extent Wooten continues to maintain Beth LaSalle's testimony was thereby improper, the

Arkansas Supreme Court specifically rejected this claim in *Wooten* I, concluding that neither

*Payne* nor Arkansas law limited victim impact evidence to rebuttal of evidence of mitigation

offered by a defendant.  *Wooten* I, 325 Ark. at 516-17, 931 S.W.2d at 411-12.  The Arkansas

Supreme Court's decision in this regard was neither contrary to nor an unreasonable application

of federal law.


d.

Wooten claims his constitutional rights were violated by trial counsel's failure to object

to inflammatory prosecutorial argument. Wooten alleges that "the State's misconduct began in

its opening statement at the guilt phase and set the stage for the continued misconduct."  *See* Am.

Pet. at 45.  Wooten challenges the following comments:

> Common sense will tell you what's different about the third one; and we've got the Defendant with his blue bathing suit with the red band around the top and his stained eye teeth; and we've got a cold-blooded murderer; and that Ladies and Gentleman is this Defendant right here, Number Three.  R. at 763 (guilt phase opening).

> Teb Porter is a hero and this defendant is a coward.  He's a coward and he's a murderer.  R. at 1157 (guilt phase closing).

> Everyone of you was asked in voir dire if you would hold the state accountable for a motive and you assured me you wouldn't make us try to explain what was going on through his head because I don't want to be there; but there's some obvious things about this and I'm sure you've seen.  Three people hiking, one shot dead, the other shot three times and the other one in and around this shooting definitely a danger, but no physical injuries and that one person is a pretty little eighteen year old girl.  The one person who doesn't have a scratch on her when he is from me to you is Molly; and you see where I'm going.  You know; but that's not our burden, although you know what was happening.  R. at 1158 (guilt phase closing).

17

He's the guilty dog.  R. at 1175 (guilt phase closing rebuttal).

The details of the conversation were essentially the same and they [Teb and Molly] had never compared notes. I believe them.  R. at 1179-80 (guilt phase closing rebuttal).

Now he's saying 'Maybe you'll acquit him.'  You know, that's crazy because, you know, this man can't be back on the street again.  R. at 1181 (guilt phase closing rebuttal).

[A]s he started to laying out his plan and he carried it out and in so doing destroyed a family and the dreams of that family ... He's never saw a guiltier person and while he says that we rejected everything, I have never seen a guiltier man, no matter how you cut it....  R. at 1183 (guilt phase closing rebuttal).

I was there that week; and you want to know something?  What he [Mr. Wooten] did in the woods that day was as every bit as bad as what Allen Willett did because it was senseless.  So was Allen Willett's behavior.  R. at 1212 (sentencing phase opening).

Am. Pet. at 45-46.

Even assuming some or all of the above comments were improper, not every improper comment made by a prosecutor equals a constitutional violation and reversal of the conviction.

The Eighth Circuit Court of Appeals has stated:

Under due process analysis, it is not enough that a prosecutor's remarks were undesirable or even universally condemned, but they must have so infected the hearing with unfairness so as to deny the defendant of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (addressing closing arguments during the guilt-innocence phase of the trial). Not only must the prosecutor's comments be improper, they must also be prejudicial. Therefore, upon finding that a prosecutor has made improper comments in his closing argument, we: (1) measure the type of prejudice emanating from the argument; (2) examine what defense counsel did in his argument to minimize the prejudice; (3) review jury instructions to determine if the jury was properly instructed; and (4) determine if there is a reasonable probability that the outcome of the sentencing phase would have been different in light of all the aggravating and mitigating circumstances. *Antwine* [*v. Delo*], 54 F.3d [1357,] at 1363 [(8th Cir. 2001)].

18

*Simmons v. Bowersox*,  235 F.3d 1124, 1136-37 (8th Cir.), *cert. denied*, 534 U.S. 924 (2001).  *See also Weaver v. Bowersox*, 438 F.3d 832, 840-41 (8th Cir. 2006).  "The court should only grant habeas corpus relief if the state's 'closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial.'"  *Id.* (quoting *James v. Bowersox,*187 F.3d 866, 869 (8th Cir. 1999), *cert. denied*, 528 U.S. 1143 (2000)).

This Court finds that the prosecutor's comments did not make the entire proceeding fundamentally unfair.  *See Sloan v. Delo*, 54 F.3d 1371, 1389 n.19 (8th Cir. 1995), *cert. denied*, 516 U.S. 1056 (1996) (citing *Darden*, 477 U.S. at 178-79).  The prosecutor's statements did not misrepresent witness testimony or provide false information to the jury, the trial court's jury instructions (R. at 1133-42, 1207-10, 1220) properly cautioned the jury that statements, arguments, and remarks by the attorneys are not evidence, and defense counsel obviously blunted the impact of the prosecutors's statements by persuading the jury to find a number of mitigating circumstances.  In this respect, the prosecutor's statements did not diminish the jury's sense of responsibility, and evidence of Wooten's guilt was substantial.  Thus, there is not a reasonable probability that the outcome of either the guilt or sentencing phase would have been different had trial counsel objected, and trial counsel thus was not ineffective.

e.

In sum, Wooten has not demonstrated that trial counsel's actions were outside the range of professionally competent assistance for his alleged failure to investigate life history, failure to investigate mental health history for issues relating to guilt and sentencing, failure to object to victim impact testimony during the guilt phase, and failure to object to inflammatory prosecutor

argument.  Accordingly, Wooten has not demonstrated either cause for default with respect to

the above issues and actual prejudice, or that such default will result in a fundamental

miscarriage of justice.  *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338-39).


3.

Wooten next claims his Eighth and Fourteenth Amendment rights were violated by the

trial court's following response to a note from the jury regarding parole eligibility:

> BY THE COURT: Ladies and Gentlemen, the bailiff has handed me another written question from the Jury.  I'll read it: "If we sentence life without parole, is there any circumstance or is there any person who would have the power to parole this man, in other words, the governor?"

> That's kind of a hard question to answer "yes" or "no"; but I think what you're wanting to know from this Court, and you correct me if I am wrong; but to give a person on a capital murder sentence life without parole, what does that mean? Can anyone let him out?

> Effective January 1 of this year, excuse me, of 1994, a bill went into effect or an act went into effect that says that all applications for pardon, commutation of sentence, reprieve, respite, remission of fine and forfeiture are required to be referred to a board that's been established called the post-prison transfer board for investigation. If any request is made to that board, that board is required to notify the sentencing court and the prosecuting attorney in that district and is also required to give notice to the victims of any crime that may have been the result of that particular sentence. A hearing is held and that board makes a recommendation to the governor. The governor is then required by law at least thirty days before granting any kind of application for pardon, commutation of sentence or remission of fine and forfeiture shall file with the secretary of state a notice of his intention to grant such application.

> That's about the only way I know to answer your question is to refer you to the current status of the law with respect to that.  All right?  All right.

R. at 1221-22.

20

Wooten argues that the trial court misstated the law, thereby confusing the jury on whether parole would be an option, and that it was ineffective assistance of counsel to not object to the trial court's error, thus excusing any default.  The trial court, however, did not misstate the law or confuse the jury; he answered the question by correctly explaining the powers the governor has to commute or pardon someone.  *See Stephens v. State*, 328 Ark. 81, 91, 941 S.W.2d 411, 416-17 (1997) (noting that it is not error for a trial court to inform the jury of the governor's power to pardon).[8]  Thus, it was not ineffective assistance of counsel not to object to the trial court's response to the jury's note, and there certainly was no error that had a substantial and injurious effect or influence on the jury's decision to impose death.  *See Calderon v. Coleman*, 525 U.S. 141,145 (1998) (a federal court may grant habeas relief based on trial error only when that error had substantial and injurious effect or influence in determining the jury's verdict).[9]

Although Wooten presents testimony by several jurors to the effect that they would have voted differently during the sentencing phase had the judge not "confused" them regarding the meaning of life without parole, this Court may not consider such evidence of confusion, as testimony or affidavits by jurors about their misunderstanding of an instruction are inadmissible pursuant to Ark.R.Evid. 606(b) and its virtually identical counterpart in the Federal Rules of Evidence, Fed.R.Evid. 606(b).  *See Waste Management of Arkansas, Inc. v. Roll Off Service,*

---

[8] Ark. Code Ann. § 16-93-607 provides that "[i]nmates under sentence of death or life imprisonment without parole shall not be eligible for release on parole but may be pardoned or have their sentence commuted by the Governor, as provided by law.  Inmates sentenced to life imprisonment shall not be eligible for release on parole unless the sentence is commuted to a term of years by executive clemency. Upon commutation, the inmate shall be eligible for release on parole as provided in this section."  Ark. Code Ann. § 16-97-103 provides that "[e]vidence relevant to sentencing by either the court or a jury may include, but is not limited to, the following ... (1) the law applicable to parole, meritorious good time, or transfer ..."

[9] Additionally, the jury was given instructions regarding the sentencing options, *i.e.*, life without parole.  R. at 158.

*Inc.*, — S.W.3d —, 88 Ark.App. 343, 2004 WL 2729761 (Ark.App. 2004); *Scogin v. Century Fitness, Inc.*, 780 F.2d 1316, 1320 (8th Cir. 1985).

In sum, Wooten has not demonstrated either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338-39).

4.

Wooten next claims he has been sentenced to death in violation of his Sixth, Eighth, and Fourteenth Amendment rights due to juror misconduct. Wooten relies on testimony from Juror Denise Lane that she voted for the death penalty, "not because I thought the aggravating circumstances of the crime warranted the death penalty," but to "lessen the likelihood that he would be eligible for any type of release from prison," and her admission that she refused to follow the trial court's instruction that each juror must find that the aggravating circumstance was justified beyond a reasonable doubt to impose the sentence of death. Am. Pet. at 54-55. Wooten claims that juror Lane's intentional disregard for the law was misconduct and, at the very least, error.

Wooten is not entitled to relief on this claim as he failed to present this claim in state court and he has not demonstrated either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338-39). Even were this Court to consider the claim, "a jury is presumed to follow the instructions given to it by the court," *United States v. Goodner Bros. Aircraft, Inc.*, 966 F.2d 380, 384 (8th Cir.1992), *cert. denied*, 506 U.S. 1049 (1993) (*citing Greer v. Miller*, 483

U.S. 756, 766 n.8 (1987)); *see also Kelly v. State*, 350 Ark. 238, 242, 85 S.W.3d 893, 895

(2002), and, as previously noted, inquiries into the jury's thoughts, including the jury's fidelity

to the court's instructions, is prohibited.  *See, e.g., Robles v. Exxon Corp.*, 862 F.2d 1201, 1205

(5th Cir.), *cert. denied*, 490 U.S. 1051 (1989) (citing *Tanner v. United States*, 483 U.S. 107

(1987)).


### 5.

Wooten next claims the Arkansas Supreme Court's opinion on his claim of ineffective

assistance of counsel in the penalty phase of his trial is contrary to and an unreasonable

application of federal law.  He again claims that the failure of his post-conviction attorney,

James Clawson, to produce in his initial Rule 37 petition mitigation witnesses such as Wooten's

mother, wife, and siblings – thus leading the Arkansas Supreme Court to reject Wooten's claim

of ineffective assistance for failure to offer such evidence on grounds that Wooten failed to

demonstrate what such witnesses would have testified to – was due to the fact that Clawson was

a "lawyer by fraud," that trial counsel's decision to produce only two mitigation witnesses was

based not on a full investigation but on his mistaken understanding of *Payne*, and that *Payne*

banned victim impact evidence except in rebuttal to mitigation.

This Court has already addressed these claims, however, determining that (1) as there is

no Sixth Amendment right to the effective assistance of post-conviction counsel, the position in

which Clawson served, any such ineffective assistance is insufficient as a matter of law to serve

as cause for the default and Wooten in any case cannot show prejudice, (2) Wooten has not

demonstrated that trial counsel's actions were outside the range of professionally competent

assistance, and his claim that his constitutional rights were violated by his trial counsel's failure to investigate his life history is defaulted and without merit, (3) Wooten has not demonstrated that trial counsel's decision not to call all the witnesses he earlier identified and any additional witnesses was anything other than sound trial strategy, (4) the Arkansas Supreme Court's decision that neither *Payne* nor Arkansas law limited victim impact evidence to rebuttal of evidence of mitigation offered by a defendant was not contrary to or an unreasonable application of federal law and there was no ineffective assistance of counsel related to this claim, and (5) given the evidence against Wooten, including Porter's and Molly's compelling testimony at trial positively identifying Wooten as the assailant, it cannot be said that there is a reasonable likelihood the jury would have acquitted Wooten of capital murder or sentenced him to life even if trial counsel had admitted additional evidence of life history.  Accordingly, the Court rejects Wooten's claim that the Arkansas Supreme Court's opinion on his claim of ineffective assistance of counsel in the penalty phase of his trial is contrary to or an unreasonable application of federal law.

6.

Wooten next claims his Sixth, Eighth, and Fourteenth Amendment rights were violated by juror bias.  He claims juror Kenneth New had already decided Wooten was guilty when he was selected to sit on the jury, pointing to the following excerpt from New's affidavit as evidence of such bias:

> I served as a juror for the Jimmy Wooten trial.  I was aware of the incident before the trial began, but did not feel like I was prejudiced against the defendant.  I spoke with Mr. Wooten's brother and wife before the trial began and before I was selected as a juror.  I ran into Mr. Wooten's brother when I was on a dove hunt.

24

The conversation concerning the incident was restricted to casual conversation wherein I told his brother that I thought there had to be more to the incident that just Mr. Wooten going out there and shooting someone. I thought that there must have been some type of provocation that led to the incident. It just didn't make sense to me, but I had no knowledge of the incident other than what had been reported in the news until I began hearing the evidence during the trial. The only reason I spoke with the brother was because I ran into him at the hunt, and the case had been in the newspapers. I think Mr. Wooten's wife called me because the brother told her that I spoke with him. As I recall, I simply restated what I had told the brother to Mrs. Wooten. I reported those contacts during the jury selection process and thought that I would be excused from the jury because of those contacts. When I was selected for the jury I was a bit surprised.

Ex. 41. Wooten claims this affidavit establishes that juror New came to trial believing that Wooten had gone "out there and [shot] someone."

Wooten is not entitled to relief on this claim of juror bias as he failed to present this claim in state court and he has not demonstrated either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338-39). Even were the Court to consider the claim on its merits, it would fail as no juror bias has been demonstrated.

Juror bias can be established either by an express admission, or by proof of specific facts which show such a close connection to the facts at trial that bias is presumed. *Fuller v. Bowersox*, 202 F.3d 1053, 1056 (8th Cir.), *cert. denied*, 531 U.S. 995 (2000). The Eighth Circuit stated:

As the district court noted in its opinion denying relief on the issue of juror bias, [petitioner's] burden was not only to show that a juror failed to disclose a material fact during voir dire, *see McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), but also to establish that the juror was in fact biased, *see Smith v. Phillips*, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). In other words, "a juror's [apparent] dishonesty is not a [sufficient] predicate to obtaining a new trial." *Cannon v. Lockhart*, 850 F.2d 437, 440 (8th Cir.1988). Instead, because the "central concern" in habeas cases is "the fundamental fairness of the proceeding," *Strickland*, 466 U.S. at 697, 104 S.Ct.

2052, "[t]he focus is on bias," *Cannon*, 850 F.2d at 440, and "only those reasons [for failing to disclose information] that affect a juror's impartiality can truly be said to affect the [fundamental] fairness of a trial," *McDonough Power Equipment, Inc.*, 464 U.S. at 556, 104 S.Ct. 845.  For habeas corpus purposes, such bias may be found either by an express admission, or by proof of specific facts which show such a close connection to the facts at trial that bias is presumed." *Burton v. Johnson*, 948 F.2d 1150, 1158 n. 10 (10th Cir.1991).

*Id.*

Here, juror New disclosed during voir dire that he had previously spoken with Wooten's brother and wife prior to being called for jury duty, *see* R. at 543, and he stated he could be fair and base his decision on what he heard in the courtroom.  *Id.* at 542-545, 549-50, 558, 560-63; Am. Pet. at 65.  Wooten has not presented specific facts which show such a close connection to the facts at trial that bias is presumed, and he has not otherwise presented anything to this Court that would call into question Juror New's impartiality.

7.

Wooten next claims that Arkansas' "great risk of death" aggravating circumstance – Ark. Code Ann. § 5-4-604 – violates the Eighth and Fourteenth Amendments as it fails to adequately narrow the sentencer's discretion.  Wooten did not raise the constitutionality of the "great risk of death" aggravator claim in state court, however, and he has not demonstrated either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice.  *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338-39).[10]  In any case, both the Arkansas Supreme Court and the Eighth Circuit have upheld the constitutionality of the "great

---

[10] Wooten did argue in his appeal to the Arkansas Supreme Court from the denial of his Rule 37 petition that trial counsel was ineffective for failing to argue that the Arkansas death penalty sentencing scheme is unconstitutional.  The Arkansas Supreme Court rejected this argument, however, noting that it has "repeatedly rejected this contention," and that "[c]ounsel cannot be found ineffective for failing to make an argument that has no merit or that has been previously rejected by this court." *Wooten* III, 351 Ark. at 246-47, 91 S.W.3d at 66 (citations omitted).

risk of death" aggravator, rejecting the claim Wooten now asserts.  *See, e.g. Cox v. State*, 313 Ark. 184, 194-96, 853 S.W.2d 266, 271-72 (1993); *Cox v. Norris*,  133 F.3d 565, 571 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).


8.

Wooten next claims that the Arkansas victim impact statute – Ark. Code Ann. § 5-4-602(4) – is unconstitutional under the Eighth and Fourteenth Amendments in that it is void for vagueness, does not give sufficient guidance to the jury regarding the consideration of  victim impact evidence and how to reconcile or weigh it with mitigating and aggravating circumstances, and permits the jury to consider irrelevant and inflammatory evidence amounting to non-statutory aggravation.  However, Wooten did not raise this particular challenge to the Arkansas victim impact statute in state court – he only challenged Beth LaSalle's victim impact testimony on grounds that it was elicited during the State's initial presentation in the sentencing phase rather than as rebuttal to any mitigating evidence offered by Wooten –,[11] and he has not demonstrated either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice.  *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338-39).  In any case, both the Arkansas Supreme Court and the Eighth Circuit have rejected challenges to Arkansas' victim impact statute of the type that Wooten now asserts, *see Kemp v. State*, 324 Ark. 178, 203-05, 919 S.W.2d 943, 955-56 (1996), *cert. denied*, 519 U.S. 982 (1996); *Nooner v. Norris*,  402 F.3d 801, 807-08 (8th Cir.2005), *cert. denied*, 126 S.Ct. 2037 (2006), and

---

[11] Wooten did present in his petition for writ of certiorari filed with the United States Supreme Court, which as previously noted was denied, the question of whether a victim impact capital sentencing statute that neither provides a definition of victim impact within the statute, nor provides uncontradictory guidance on where and how the jury is to consider the evidence, violates the Eighth and Fourteenth Amendments.

the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer. *Harris v. Alabama*, 513 U.S. 504, 512 (1995). *Cf. Kansas v. Marsh*, — S.Ct. — , 2006 WL 1725515 (U.S. Sup.Ct. June 26, 2006) (statute which requires the imposition of the death penalty when the sentencing jury determines that aggravating evidence and mitigating evidence are in equipoise does not violate the Constitution). Moreover, the evidence admitted against Wooten is of the same type admitted in *Payne*: a family member of the victim – David LaSalle's wife, Beth – explaining to the jury the impact the murder has had on the victim's family. R. at 1196-1200. Wooten has failed to show how this testimony unduly prejudiced him or how it violated his Eighth and Fourteenth Amendment rights. *See Nooner*, 402 F.3d at 807 (evaluating vagueness challenges to statutes not involving First Amendment rights based on the particular facts of the case).[12]

### 9.

Wooten next claims Arkansas' use of victim impact testimony is prohibited by the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), in that such testimony does not meet the requirement that any factor increasing the possible punishment in a capital case must be charged in the information and proved to the jury beyond a reasonable doubt. This claim, however, is foreclosed by the Supreme Court's holding in *Schriro v. Summerlin*, 542 U.S.

---

[12] Wooten asserts, without elaboration, that the State was permitted to introduce numerous victim impact letters. Am. Pet. at 69. It appears, however, that those letters, located at 1249-1355 of the record, were only *proffered* by the State. *See* R. at 1188, 1190, 1249. Wooten does not point to anything in the record indicating these letters were ever submitted to the jury for consideration, *see* R. at 1190 (wherein the court reporter acknowledges the proffered victim impact statement letters but does not show that they were admitted) and these letters were not referenced in front of the jury at any point during the sentencing phase. R. at 1190-1225. In any case, Wooten does not address how these letters unduly prejudiced him, even had they been submitted to the jury.

348 (2004), that *Ring* does not apply retroactively.  *See Palmer v. Clarke*, 408 F.3d 423, 441 (8th

Cir.), *cert. denied*, 126 S.Ct. 755 (2005).[13]


10.

Wooten next claims that the Arkansas Supreme Court's decision regarding the

prosecution's use of a peremptory strike of the only African-American on the jury venire was not

fairly supported by the record and is not entitled to a presumption of correctness.  The Arkansas

Supreme Court stated as follows in addressing this issue:

> In the instant case, the State exercised a peremptory challenge to excuse Ms.
> Shirley Hatley.  The prosecuting attorney stated that Ms. Hatley could not say that
> she would be able to sign the death penalty form if the State proved its burden.
> Counsel for Wooten objected based upon *Batson* and stated for the record that
> Ms. Hatley was the sole African-American on the panel. Wooten's counsel
> asserted that Ms. Hatley in fact stated that she could consider the death penalty. In
> response, the prosecuting attorney asserted that Ms. Hatley was the only juror
> who stated that she did not know whether she could sign the death penalty form.
> The prosecuting attorney also noted for the record that Wooten and the officers
> involved in the case were all white, but he conceded that Wooten was not
> precluded from raising a *Batson* objection. *See Powers v. Ohio*, 499 U.S. 400, 111
> S.Ct. 1364, 113 L.Ed.2d 411 (1991) (defendant's race is irrelevant to his standing
> to object to the discriminatory use of peremptory challenges).
>
> In overruling Wooten's *Batson* objection, the trial court concluded that Ms.
> Hatley was very hesitant in her responses to the state and that she never said that
> under the proper circumstances she could actually vote for the death penalty. The
> trial judge stated, "I don't think there is a proper *Batson* situation here and I'll
> allow them to use a peremptory challenge on Ms. Hatley."
>
> On appeal, Wooten contends that a prima facie case was established because the
> sole African-American was excused from the panel. *See Mitchell v. State*, 295
> Ark. 341, 750 S.W.2d 936 (1988). Granted, we have stated that the prosecution's
> use of a peremptory challenge to remove the only black prospective juror may

---

[13] The Supreme Court in *Ring* held that the Sixth Amendment right to a trial by jury required that a jury, not a judge, "find an aggravating circumstances necessary for imposition of the death penalty."  536 U.S. at 609.  Here, of course, Wooten was convicted and sentenced by a jury.

establish a prima facie case. *Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996); *Mitchell v. State*, 295 Ark. 341, 750 S.W.2d 936 (1988). However, as in *Prowell v. State*, supra, here the prosecutor volunteered an explanation for the challenge, and the trial court made no specific ruling on whether a prima facie case was made. In *Prowell*, this court recognized that once a prosecutor has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot. *See Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

Wooten also asserts that the State failed to provide a racially neutral reason for the challenge, and he contends that a white venireperson examined at the same time as Ms. Hatley and two others who were questioned after Ms. Hatley was excused gave answers similar to Hatley's, but were not challenged. In support of his argument, Wooten cites *Ford v. Norris*, 67 F.3d 162 (8th. Cir.1995), where the court stated that "a prosecutor's failure to apply a stated reason for striking black jurors to similarly situated white jurors may evince a pretext for excluding jurors solely on the basis of race."

However, Wooten did not present this argument to the trial court. In fact, Wooten did not mention other similarly situated jurors when the prosecuting attorney stated that Ms. Hatley was the only juror to that point who had said she did not know if she could sign the form or when the trial court noted that Ms. Hatley was very hesitant in her responses to the State. Because an appellant may not change his grounds for objection on appeal, this point is not preserved on appeal. *Gilland v. State*, 318 Ark. 72, 883 S.W.2d 474 (1994).

*Wooten* I,  325 Ark. at 513-515, 931 S.W.2d at 409-11.

Wooten states that "[b]ecause the trial court's findings were not fairly supported by the record, and because the state supreme court decided the appeal without considering the facts as developed at trial, the state fact findings cannot be afforded the presumption of correctness, and this Court should decide the merits of Petitioner's *Batson* objection."  Am. Pet. at 80.  The Arkansas Supreme Court, however, noted that "the prosecutor volunteered an explanation for the challenge," that "the trial court concluded Ms. Hatley was very hesitant in her responses to the state and ... she never said that under the proper circumstances she could actually vote for the

death penalty," and that because the trial court made no specific ruling on whether a prima facie

case was made, the preliminary issue of whether the Wooten had made a prima facie showing

was moot.  *Wooten* I,  325 Ark. at 513-515, 931 S.W.2d at 409-11.  Indeed, Wooten

acknowledges that

> [i]n its opinion, the state supreme court stated the prosecutor said the juror could
> not say that she would be able to sign the death penalty form if the prosecution
> proved its burden.  Wooten, 325 Ark. at 514, 931 S.W.2d at 410.  The Court also
> noted Mr. Wooten's trial counsel asserted that the juror had in fact stated that she
> could consider the death penalty.  *Id.*  The Court further noted that the trial judge,
> in turning down the *Batson* challenge, concluded the juror was very hesitant in
> her responses to the state and that she never said that under the proper
> circumstances she could actually vote for the death penalty.  *Id.*

Am. Pet. at 75.

The Arkansas Supreme Court, then, did address the facts underlying the prosecutor's

stated reason for challenging Mrs. Hatley, and the record certainly supports the conclusion that

Mrs. Hatley was hesitant in her willingness to impose the death penalty if the circumstances

warranted.  When asked during voir dire whether she could impose the death penalty, Mrs.

Hatley responded:

> Mrs. Hatley: I don't think it's right for someone to take someone else's life; and,
> you know, I've often said that if it was my child or my brother or whatever out
> there, you know, that got hurt, you know, you'd want an eye for an eye and a
> tooth for a tooth.
>
> Q. Right.
>
> Mrs. Hatley:  But, you know, when it actually comes down to the actual event, I
> don't know.
>
> Q.  You couldn't tell the Court until you got to that point?
>
> Mrs. Hatley: Right.  The evidence, you know, that would – it would be a hard
> decision to make.

Q.  Okay.  Let's say the evidence is there and let's say the proof is there and you get beyond a reasonable doubt that he committed the murder and then you get beyond a reasonable doubt that he deserves the death penalty and the State proves it, can you sign that document when it comes right down to it?

By Mrs. Hatley: That's hard to say because that's something that I – that's a decision I would have to make after the evidence was in.

Q. Can you consider – let me ask you this.  Can you consider doing it from where you sit today; and if you can't, that's perfectly fine.  If you can't, that's perfectly fine.  Like I said at the first, there is no right or wrong answers here today.

By Mrs. Hatley: I don't know.  That's something I can't – I can't know what I'm going to do in the future.

R. at 597-98.

Following that colloquy, the trial court explained its reasoning when it dismissed Ms.

Hatley by stating as follows:

By the Court:  All right.  Well, I know that she was very hesitant in her response to the State about the – she said that she could consider them both.  She always included that; but she never did say that under the proper circumstances that she could actually vote for it; and it kind of got left with that.  It was never developed any more than that by either of the attorneys.  I don't know that the State is required to submit her for cause because of that, if they feel because her answers weren't definite enough. I don't think there is a proper *Batson* situation here and I'll allow them to use a peremptory challenge on Ms. Hatley.

By [The Prosecutor]:  Judge, there's one other thing I'd like to state for the record.  Her body language and the way she handled herself whenever we got down to that one issue of signing that document also indicated to me that she was very uncomfortable in considering that; and I just want that on the record.

R. at 609.

The Arkansas Supreme Court's representation of the record is accurate, and Wooten's

showing falls far short of rebutting with clear and convincing evidence the state court's

presumptive correctness concerning the prosecution's use of a peremptory strike of the only

African-American on the jury venire.  *Cf. Anderson v. State*, 357 Ark. 180, 206, 163 S.W.3d 333,

348 (2004) (inconsistent responses regarding views on death penalty is race-neutral explanation for excusing African-American prospective juror and does not give rise to *Batson* challenge); *Simmons v. Luebbers*, 299 F.3d 929, 941 (8th Cir. 2002), *cert. denied*, 538 U.S. 923 (2003) (state appellate court did not make unreasonable determination of fact in concluding that prosecutor's stated reasons for striking African-American venireperson in habeas petitioner's capital murder trial, including because she was indecisive, were race-neutral and not violative of *Batson*); *Luckett v. Kemma*, 203 F.3d 1052, 1054-55 (8th Cir.), *cert. denied*, 531 U.S. 888 (2000) (weak responses on death penalty questions is a race-neutral reason).

11.

For his final claim, Wooten claims he is mentally retarded and, therefore, ineligible for the death penalty pursuant to *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding that the Eighth Amendment prohibits the execution of the mentally retarded).[14]  Wooten's *Atkins* claim is procedurally defaulted as he never presented a claim of mental retardation in state court. Wooten argues, however, that because there was an absence of a constitutional right against execution of the mentally retarded prior to *Atkins* and, hence, prior to his trial and direct appeal, the claim was so novel as to excuse his failure to raise the claim in state court.

Certainly, "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures."  *Reed v. Ross*, 468 U.S. 1, 16 (1984).  If, however, "'the tools were available' for a petitioner to construct the legal argument at the time of the state appeals process,

---

[14] The rule in *Atkins* prohibiting the execution of mentally retarded defendants was made retroactive to cases on collateral review.  *See Davis*, 423 F.3d at  879 (citing *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)).

33

then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier."
*Frizzell v. Hopkins*, 87 F.3d 1019, 1021 (8th Cir. 1996) (citations omitted).

Here, there can be no doubt that the legal tools needed to construct a claim that Wooten's alleged mental retardation renders him ineligible for the death penalty were available to Wooten at all levels of his state court proceedings.   The parameters of such a claim have been available at least since the Supreme Court's 1989 decision in *Penry v. Lynaugh*, 492 U.S. 302, rejecting the claim that the Eighth Amendment categorically prohibits the execution of the mentally retarded.  Wooten was not precluded from pressing the view that *Penry* was wrongly decided and that the Eighth Amendment prohibits the execution of the mentally retarded.

Moreover, Wooten had at his disposal Ark. Code Ann. § 5-4-618(b), which is part of Act 420 of 1993 and which provides that no defendant with mental retardation at the time of committing capital murder shall be sentenced to death.[15]  This statute, like *Atkins*, prohibits the execution of the mentally retarded.  Indeed, the Arkansas Supreme Court has determined that "the court in *Atkins* merely reaffirmed this State's preexisting  prohibition [as codified in § 5-4-618] against executing the mentally retarded."  *Anderson*, 357 Ark. at 216, 163 S.W.3d at 354-55.  *See also Engram v. State*, 360 Ark. 140, — S.W.3d — , 2004 WL 2904678, *6 (2004), *cert. denied*, 125 S.Ct. 2965 (2005) (noting that "Arkansas has made § 5-4-618 the 'way[ ] to enforce the constitutional restriction'" set forth in *Atkins* prohibiting the execution of the mentally

---

[15] "[A] defendant who wishes to invoke [5-4-618] must do so by written motion prior to trial. § 5-4-618(d)(1). If such motion is filed, the trial court must determine prior to trial whether the defendant is in fact mentally retarded." *Rankin v. State*, 329 Ark. 379, 390, 948 S.W.2d 397 (1997) (citing § 5-4-618(d)(2)).

retarded) (quoting *Anderson, supra*)).  The statute was available to Wooten before and during trial.[16]

Accordingly, this Court concludes that Wooten has not demonstrated either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice.  *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338-39).[17]


IV.

For the foregoing reasons, the court finds that Wooten's petition for writ of habeas corpus should be and it hereby is denied in its entirety.  Judgment will be entered accordingly.

IT IS SO ORDERED this 19th day of September, 2006.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[16] Wooten never invoked this statute, however, perhaps because, as previously noted, Wooten was able to hold several jobs, graduate high school, attend college for two years, maintain his driver's license, and, apparently, operate an aircraft, having formerly owned an airplane.  *See* n.7, *supra*.

[17] Respondent agrees with Wooten that *Atkins* "was decided after [Wooten's] state proceedings were concluded." Resp. to Am. Pet. at 26.  This is not entirely correct as Wooten's brief in support of his Rule 37 petition was filed with the Arkansas Supreme Court in March 2002, the decision in *Atkins* was handed down on June 20, 2002, and the Arkansas Supreme Court's decision denying Wooten Rule 37 relief was handed down over five months later, on December 5, 2002.  Although Wooten apparently did not make the Arkansas Supreme Court aware of *Atkins* and its alleged applicability to his case (even though he was represented during his final Rule 37 appeal by one of the same counsel raising *Atkins* in this petition), it certainly is doubtful whether the Court, given its view of § 5-4-618, would have in any case entertained such a claim.  *See Engram*, 360 Ark. 140, — S.W.3d —, 2004 WL 2904678 (declining to recall mandate based on *Atkins*' newly recognized constitutional right against execution of mentally retarded when Engram failed to avail himself at trial of § 5-4-618).